UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00166-TBR

ANTHONY FERREE     Plaintiff

v.

ROGERS GROUP, INC.     Defendant

**MEMORANDUM OPINION**

This matter is before the Court upon Defendant Rogers Group, Inc.'s Motion for Summary Judgment. (Docket No. 20.) Plaintiff Anthony Ferree has responded, (Docket No. 23-1), and Defendant has replied, (Docket No. 24). This matter now is ripe for adjudication. For the reasons that follow, Defendant's Motion will be GRANTED and summary judgment entered in its favor.

BACKGROUND

Plaintiff Anthony Ferree began working for Defendant Rogers Group, Inc., in December 2008. During the final months of his employment, Plaintiff worked as an asphalt plant operator, which required him to oversee the plant's asphalt production process. Until November 2011, Plaintiff occasionally worked with superintendent Darrell Quertermous, who supervised certain maintenance activities at the plant. Quertermous reported to Regional Vice President Lori Harper, who oversaw all of Defendant's asphalt plants.

Plaintiff and Quertermous had difficulty working together and were involved in several disputes. Quertermous and Harper testified that they were not satisfied with how Plaintiff was performing his job. Harper met with Divisional Vice President Darin Matson on October 27, 2011, to discuss to Plaintiff's performance issues. Notes from that meeting reflect that the decision was made to "begin [the] disciplinary process" for Plaintiff. (Docket No. 20-4, at 54.) Harper documented a meeting with Plaintiff the following day, October 28 in which the two discussed Plaintiff's performance issues. (Docket No. 20-4, at 47.) Around that same time, Defendant began training another employee to perform Plaintiff's job. Plaintiff testified that by this point he was having serious disagreements with Quertermous "on a daily basis" and that he had even decided to resign and tendered a two-weeks' notice to Harper. (Docket No. 20-6, at 13-15.) Plaintiff further testified that had he been forced to continue working with Quertermous, he would have quit. (*See* Docket No. 20-6, at 18.)

On November 14, 2011, Quertermous took over as superintendent for the entire plant, thereby becoming Plaintiff's official supervisor. On that day or shortly thereafter, Quertermous and Plaintiff had another disagreement after Quertermous approached Plaintiff about certain problems with the plant's production. According to Plaintiff, he eventually "told [Quertermous] if he thought . . . I wasn't doing my job to fire me." (Docket No. 20-6, at 23.) Several days later, on or around November 16, 2011, Quertermous again approached Plaintiff regarding certain problems with the plant. As Quertermous attempted to speak to him, Plaintiff, who was involved in loading a truck, did not respond to him. Quertermous apparently perceived that Plaintiff was intentionally ignoring him. In his deposition, Plaintiff acknowledged that did not

respond to Quertermous's questions and "may have ignored [Quertermous] for a few seconds" because he was "focused on loading the truck." (Docket No. 20-6, at 25-27.)

After that incident, Quertermous contacted Harper to discuss Plaintiff's behavior. On November 17, 2011, Quertermous and Harper brought the issue to Matson's attention, and the three appear to have agreed to terminate Plaintiff. (Docket Nos. 20-2, at 25-27; 20-3, at 32-34.) Harper documented that conversation in personal notes dated November 17, 2011. (*See* Docket No. 20-4, at 45.) According to Quertermous, it was decided on November 17 that he would terminate Plaintiff the following day. (Docket No. 20-2, at 27.)

Quertermous and Harper spoke with one of Defendant's human resources officials the following morning on November 18 about, among other things, ensuring that Plaintiff returned company property and that Plaintiff removed his own personal property from the plant. Meanwhile or shortly thereafter that morning, Plaintiff was traveling in a company-owned vehicle, purportedly to purchase some office and cleaning supplies for the plant. While stopped at a traffic light, Plaintiff was involved in a multiple-vehicle collision. Plaintiff called Harper to report the accident and was told he needed to submit to a urine test at an off-site facility. After doing so, Plaintiff returned to work at the plant. At approximately 3:00 p.m., Plaintiff met with Quertermous, and Quertermous informed Plaintiff of the company's decision to terminate him.

Approximately 40 minutes after he was terminated, Plaintiff emailed Harper stating his back and neck were hurting from the accident and asking how to pursue

worker's compensation benefits. (Docket No. 20-7, at 17.) Harper spoke to claims representative Linda Williams before returning Plaintiff's email a few hours later and informing him where he needed to go to obtain medical treatment. (Docket No. 20-7, at 17.) Within the next few days, Defendant filed a "first report of injury" and assigned Plaintiff's worker's compensation claim to its third-party claims administrator, Liberty Mutual. (*See* Docket No. 20-8, at 56.)

Plaintiff filed his original Complaint in Christian Circuit Court on October 11, 2012, alleging that Defendant terminated his employment in retaliation for asserting his rights under the Kentucky Worker's Compensation statutes. (Docket No. 1-1.) Defendant timely removed this action on the basis of diversity on November 11, 2012. (Docket No. 1.)

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "[T]he mere existence of a colorable factual dispute will not defeat a properly supported

motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Finally, while the substantive law of Kentucky is applicable here pursuant to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 70 (2010).

DISCUSSION

Defendant argues that summary judgment is warranted because Plaintiff cannot establish a *prima facie* claim for retaliation and, even if he could, his own admissions preclude him from establishing pretext. In order to establish a *prima facie* claim for worker's compensation retaliation under Kentucky law, a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) the defendant knew that he had done so; (3) an adverse employment action was taken; and (4) there is a causal connection

between the protected activity and the adverse employment action.  *Hackworth v. Guyan Heavy Equip., Inc.*, 613 F. Supp. 2d 908, 915 (E.D. Ky. 2009) (citing *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 915 (Ky. Ct. App. 2006)); *see also Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790 (Ky. 2004).  Here, Plaintiff's *prima facie* retaliation case fails at least two of these requirements.

First, Plaintiff cannot establish the second prong, "employer knowledge," because the evidence of record shows that Defendant decided to terminate him before it had any reason to know he would pursue worker's compensation benefits.  It is clear that Plaintiff sustained the injuries giving rise to his worker's compensation claim on November 18, 2011—the day after the decision was made to terminate him.  As such, Plaintiff cannot show that Defendant knew (or could possibly have known) about any worker's compensation claim when it decided to terminate him.

Second, for much the same reason, Plaintiff cannot establish the fourth prong, "causation," because Defendant decided to terminate him—or at minimum contemplated terminating him—before he engaged in any protected activity.  As the Kentucky Court of Appeals recently recognized, "[A]n adverse employment decision that predates a protected activity cannot be caused by that activity." *Charalambakis v. Asbury Coll.*, --- S.W.3d ---, 2014 WL 346068, at *9 (Ky. Ct. App. Jan. 31, 2014) (alteration in original) (quoting *Muñoz v. Sociedad Española de Auxilio Mutuo y Beneficiencia de P.R.*, 671 F.3d 49, 56 (1st Cir. 2012)).  Furthermore, both state and federal Kentucky courts, in applying the United States Supreme Court's decision in *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001), have recognized that a plaintiff cannot establish causation where the employer was already contemplating the

adverse employment action before the plaintiff engaged in any protected activity. *See, e.g.*, *Montell v. Diversified Clinical Servs. Inc.*, --- F. Supp. 2d ---, 2013 WL 4521014, at *10 (E.D. Ky. Aug. 26, 2013); *Charalambakis*, 2014 WL 346068, at *9; *Kegley v. Morehead State Univ.*, 2006 WL 3456632, at *5 (Ky. Ct. App. Dec. 1, 2006). In this sense, "[i]t is not required that the adverse employment action was definitively decided upon; rather, it is only required that the employment action had been contemplated prior to the knowledge of the protected activity." *Montell*, 2013 WL 4521014, at *10 (internal quotation marks omitted) (citation omitted). Indeed, an employer need not suspend previously planned disciplinary action merely because it discovers that the employee has engaged in protected activity: "[P]roceeding along lines previously contemplated, though not yet definitely determined, is no evidence whatever of causality." *Kegley*, 2006 WL 3456632, at *5 (quoting *Breeden*, 532 U.S. at 272); *accord Reynolds v. Fed. Express Corp.*, --- F. App'x ---, 2013 WL 5539616, at *2 (6th Cir. Oct. 8, 2013) (applying *Breeden* to conclude that the temporal proximity between plaintiffs' complaints about discrimination and their termination "is immaterial in light of the fact that [the defendant] concededly was contemplating [the adverse employment action] before it learned of [the protected activity]" (second and third alterations in original) (quoting *Breeden*, 532 U.S. at 272)).

In this case, the evidence of record indicates that Defendant decided to terminate Plaintiff's employment the day before he suffered the injuries giving rise to his worker's compensation claim. Plaintiff argues that "although there may have been a discussion about [him] on the 17th," the evidence is insufficient to establish that a "definitive decision to fire him" had been reached. (Docket No. 23-1, at 4.) This argument rings

hollow in light of *Breeden* and Kentucky courts' application of that decision. Thus, even assuming no definitive decision to terminate him was made on November 17, Plaintiff cannot overcome the fact that Defendant indisputably *contemplated* terminating him at that time. That there was a close temporal proximity between Plaintiff's injury and termination is, therefore, immaterial. *See, e.g.*, *Reynolds*, 2013 WL 5539616, at *2; *Montell*, 2013 WL 4521014, at *10. Because there simply is no proof that Plaintiff's termination resulted from his engaging in protected activity under the Kentucky Worker's Compensation statutes, he cannot establish the causation requirement for his retaliation claim.

## CONCLUSION

Therefore, having considered the parties' arguments and the evidence of record, for the foregoing reasons, the Court will GRANT Defendant Rogers Group, Inc.'s Motion for Summary Judgment, (Docket No. 20), and enter judgment in its favor.

An appropriate Order will issue concurrently with this Opinion.

Date:

cc:     Counsel